UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RHONDA MADDOX**,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**WELLS FARGO BANK, N.A., *et al.*,**<br><br>　　　　　　　Defendants. | Case No. 17-cv-2634 (CRC) |

## MEMORANDUM OPINION

In 2017, Defendant Wells Fargo Bank foreclosed on Rhonda Maddox's Washington, D.C. home. Ms. Maddox, proceeding *pro se*, sued Wells Fargo and the entities for which it was acting as a trustee, alleging violations of the Dodd-Frank Act. Specifically, she contends that Wells Fargo refused to consider her loss mitigation application before foreclosing on her home, and that Defendants acted in bad faith by intentionally undervaluing her home in the foreclosure sale. Defendants move to dismiss the Complaint. Because Maddox has not pled any facts suggesting that she submitted a proper loss mitigation application—instead relying on her Chapter 13 bankruptcy plan—and because her challenge to the foreclosure sale amounts to an improper collateral challenge to a state-court judgement under the Rooker-Feldman doctrine, the Court will grant the motion.

I. **Background**[1]

In March 2007, Maddox executed a note and a deed of trust in favor of Defendants secured by real property located in Southeast D.C. See Mot. Dismiss ("MTD") at 3. The

---

[1] When ruling upon a motion to dismiss for failure to state a claim, a court ordinarily considers "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing EEOC v. St. Francis

following month, she executed a second note and deed of trust in favor of Defendants secured by the same property. Id.

In February 2013, Maddox defaulted on the earlier Note. Id. at 4. Defendants filed a foreclosure action in District of Columbia Superior Court. See Wells Fargo Bank, N.A. v. United States, et al., No. 2015 CA 005406 R(RP) (D.C. Super. filed July 17, 2015) ("Foreclosure Matter"); see also MTD at 4; MTD Ex. 1. Maddox subsequently filed a Chapter 13 bankruptcy petition in the federal bankruptcy court. See In Re Maddox, No. 16-0344 (SMT) (Bankr. D.D.C. filed July 13, 2016) ("Bankruptcy Matter") at ECF No. 1; see also MTD at 4. The bankruptcy filing triggered an automatic stay in the foreclosure matter, pursuant to 11 U.S.C. § 362. See Foreclosure Matter at Entry Nos. 37, 39, Ord. (D.C. Super. filed Sept. 21, 2016); see also MTD at 4–5.

In bankruptcy court, Defendants filed proof of claim related to both notes and deeds. See Bankruptcy Matter at Claim Nos. 3–1, 4–1; see also MTD at 5; MTD Ex. 2. Maddox, pursuant to Bankruptcy Code requirements, filed an original and two amended Chapter 13 plans for discharging her debts. Her Second Amended Chapter 13 Plan proposed to sell the property within one year and satisfy her mortgage and tax obligations from the proceeds, which she claimed would exceed those obligations. See Bankruptcy Matter at ECF No. 37. She also proposed two months of relief from payment to the third-party bankruptcy trustee, to be followed by payments of $300 per month. See id.

---

Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997)). The court may also rely on matters of public record, including judicial proceedings and the opinions of other courts. Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may consider outside materials. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Meanwhile, Maddox failed to make full post-bankruptcy-petition payments for the months of August 2016 through March 2017. See id.; see also MTD at 5. Defendants moved for relief from the automatic stay in March 2017, see Bankruptcy Matter at ECF No. 70; see also MTD at 5, which Maddox opposed on the grounds that Defendants were adequately protected because her total obligations were less than the value of the property. See Bankruptcy Matter at ECF No. 80; see also MTD at 5–6; Opp. at 4. However, she did not contest that she had defaulted on her post-petition payments. See Bankruptcy Matter at ECF No. 80. After a hearing on the matter, Bankruptcy Judge Teel granted Defendants' motion. See id. at ECF Nos. 82, 84, 85, Ord. (Bankr. D.D.C. filed Mar. 31, 2017); see also MTD at 6. In April 2017, Maddox voluntarily dismissed her bankruptcy petition, and the matter was closed in June 2017. See Bankruptcy Matter at ECF No. 87; see also MTD at 6; Opp. at 4. She later moved to reopen the case and stay foreclosure, arguing that Defendants misrepresented the value of the property to the Court. See Bankruptcy Matter at ECF No. 90; see also MTD at 6. Judge Teel denied that motion. See Bankruptcy Matter at ECF No. 91, Mem. Op. & Ord. (Bankr. D.D.C. filed Jul. 20, 2017); MTD at 6.

With the stay lifted, the foreclosure proceeding resumed, see Foreclosure Matter at Entry Nos. 46–47, and the property was sold at auction on July 20, 2017. See MTD at 6. On August 16, 2017, a trustees' verified report of sale was filed contemporaneously with a motion to ratify the sale. See Foreclosure Matter at Entry Nos. 49–50; see also MTD at 6; MTD Ex. 3. Ms. Maddox opposed, arguing that Defendants intentionally sold the property for less than fair-market value in order to deprive her of equity she claimed to have in the property. See Foreclosure Matter at Entry No. 51; see also MTD at 6; MTD Ex. 6. Superior Court Judge Pan entered orders ratifying the foreclosure sale and the trustees' accounting and distribution of

funds.  See Foreclosure Matter at Entry Nos. 53–54, 59, Ords. (D.C. Super. filed Sept. 15 & Nov. 2, 2017); see also MTD at 7; MTD Exs. 3, 7.

Maddox appealed to the D.C. Court of Appeals on October 16, 2017.  See Maddox v. Wells Fargo Bank, N.A., No. 17-CV-1429 (D.C. Ct. App. filed Oct. 16, 2017) ("Foreclosure Appeal"), at Entry No. 1; see also MTD at 7; Opp. at 3.  She also moved in Superior Court to stay the foreclosure pending her appeal.  See Foreclosure Matter at Entry No. 60; see also MTD at 7; MTD Ex. 9.  The Superior Court denied that motion.  See Foreclosure Matter at Entry No. 61, Ord. (D.C. Super. filed Nov. 28, 2017); see also MTD at 7; MTD Ex. 10.  Maddox also filed an emergency motion to stay in her foreclosure appeal, which was denied on January 2, 2018.  See Foreclosure Appeal at Entry Nos. 2, 5, Ord. (D.C. filed Jan. 2, 2018); see also MTD at 8; MTD Exs. 8, 12.

Maddox brought this suit on November 20, 2017.  See Compl.  She initially alleged that Defendants committed unspecified violations of the Dodd-Frank Act, and improperly sold her house below market value at auction and then repurchased it.  Id. at 3, 5, 7.  She also sought review of various decisions in the foreclosure and bankruptcy actions, including a request to enjoin the order and decree of sale of the property.  Id. at 4, 5, 7.  Maddox requested compensatory and punitive damages in excess of $1 million.  Id. at 5, 7.  Since filing her complaint, Maddox has withdrawn her request for injunctive relief.  Opp. at 5.  She now alleges that Defendants violated the Dodd-Frank Act by "not offering a [loss] mitigation plan and by not considering the [loss] mitigation plan [she] offered [and] proposed in the chapter[] 13 plan." Compl. at 7; see also Opp. at 2.  She also continues to allege that Defendants purposely sold the property below market value.  Compl. at 5, 7; Opp. at 3.

**II.	Standard of Review**

Defendants move to dismiss Maddox's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  When analyzing a motion to dismiss, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor but is not required to accept the plaintiff's legal conclusions as correct." Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted) (Rule 12(b)(6)); Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (Rule 12(b)(1)).  To survive a 12(b)(6) motion, the complaint must contain sufficient facts that, if accepted as true, state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To defeat a 12(b)(1) motion, plaintiff must show "by a preponderance of the evidence that the Court has subject matter jurisdiction[.]"  Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004).  Where, as here, a plaintiff proceeds *pro se*, the Court must "consider [her] filings as a whole before dismissing a complaint," Schnitzler v. United States, 761 F.3d 33, 38 (D.C. Cir. 2014) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972).  Nevertheless, a court need not accept inferences drawn by a plaintiff, *pro se* or otherwise, if those inferences are unsupported by facts alleged in the complaint, nor must it accept plaintiff's legal conclusions.  See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III. Analysis

### A. Loss Mitigation

Ms. Maddox's primary contention is that Defendants violated the Dodd-Frank Act, Pub. L. 111–203, H.R. 4173 (July 21, 2010), by failing to consider a loss mitigation application. While she does not cite any particular provision of the law or its implementing regulations, the Court presumes she refers to 12 C.F.R. § 1024.41, which establishes "[l]oss mitigation procedures" for mortgage loans.

Defendants respond that Maddox's claim must be dismissed because Dodd-Frank does not confer a private right of action. That contention appears incorrect in this context, however. The loss mitigation procedures in 12 C.F.R. § 1024.41 were promulgated to implement Dodd-Frank's amendments to the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq*. The specific measures seemingly invoked by Maddox are the Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ("Regulation X"), see 78 Fed. Reg. 10,696 (codified at 12 C.F.R. § 1024). RESPA establishes a private right of action authorizing borrowers to sue for damages as a result of a creditor's failure to comply with the statute and its implementing regulations. See 12 U.S.C. § 2605(f). Regulation X makes clear that a borrower may enforce its loss mitigation procedures pursuant to RESPA's private right of action. See 12 C.F.R. § 1024.41(a); see also 78 Fed. Reg. 10,714 n.64.

Nevertheless, because Maddox has not indicated that she submitted a loss mitigation application pursuant to 12 C.F.R. § 1024.41, she cannot invoke RESPA's private right of action. Maddox contends that the Second Amended Chapter 13 Plan she submitted in her bankruptcy proceedings should be considered a loss mitigation application. See Compl. at 7; see also Opp. at 2. But Chapter 13 plans and the loss mitigation procedures of Regulation X are not substitutes

6

for one another. Chapter 13 plans are codified and detailed in the Bankruptcy Code. See 11 U.S.C. §§ 1321–30. Debtors, like Maddox, who file for Chapter 13 bankruptcy are required to file such a plan during the pendency of a bankruptcy proceeding. See 11 U.S.C. §§ 1321–23; see also Fed. R. Bankr. P. 3015. "To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion . . . of [her] debts over the next three to five years." Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1690 (2015). A proposed plan is subject to objection by interested parties and reviewed by the court. See 11 U.S.C. §§ 1324–25; see also Fed. R. Bankr. P. 3015. Under the Federal Rules of Bankruptcy Procedure, creditors may, but have no obligation to, object or otherwise respond to the plan. See Fed. R. Bankr. P. 3015(f). The approval or denial of a plan is squarely within the Bankruptcy Court's discretion. See id.; see also Bullard, 135 S. Ct. at 1691–94. If approved, a Chapter 13 plan is overseen by the third-party trustee, rather than directly by creditors. See 11 U.S.C. §§ 1302, 1325(b), (c), 1326, 1328(d), (g)(2)–(3).

The loss mitigation measures ostensibly invoked by Maddox represent a wholly distinct regulatory scheme. Regulation X allows a debtor to submit a loss mitigation application to a loan servicer. See 12 C.F.R. § 1024.41(b)(2). If an application is submitted 45 days prior to a foreclosure sale, the loan servicer must determine whether the application is complete, which is measured by whether the servicer "has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." Id. § 1024.41(b)(1). Thereafter, if and when a complete application is submitted, and pursuant to other procedural requirements, the servicer must notify the borrower which, if any, loss mitigation options are available. Id. § 1024.41(c)(1). Nothing in Regulation X requires the servicer to offer a loss mitigation option. Id. § 1024.41(a). In this context, if a loss

7

mitigation option is offered and accepted, it is contingent upon the borrower "perform[ing] under an agreement on" the option.  Id. § 1024.41(g)(3).

If Maddox sought consideration for foreclosure loss mitigation, she was required to comply with 12 C.F.R. § 1024.41.  Yet she has not pled any facts to suggest that she has done so.  She has provided no authority—and the Court has been unable to identify any—to support the notion that a Chapter 13 bankruptcy plan can function as a loss mitigation application.  Neither the relevant Dodd-Frank provisions, their implementing regulations, nor RESPA make any reference to Chapter 13 bankruptcy plans.

In other words, there is no basis for concluding that a mere mention of a mortgage as part of a Chapter 13 bankruptcy plan triggered the loss mitigation procedures required by Regulation X.  The schemes diverge in important ways, including: a debtor's obligation to submit information regarding alternatives to foreclosure, to whom the debtor submits such information, the information that must be submitted, a creditor's obligation to respond to a debtor's proposals, the process of approval, and the mechanism for oversight.  To illustrate: Maddox's proposals for handling her mortgage debt were submitted as a Chapter 13 plan, directed to the Bankruptcy Court for its approval or rejection.  See 11 U.S.C. §§ 1321, 1322, 1324.  Defendants had no obligation to respond.  See id. § 1324(a); Fed. R. Bankruptcy P. 3015(f).  Regulation X, meanwhile, permits a debtor to submit a loss mitigation application to the servicer itself and obligates some response when the application is properly submitted.  See 12 C.F.R. § 1024.41(b)(1)–(2).  If Maddox were correct that the Chapter 13 plan constituted a loss mitigation application, Regulation X would require a response, even though the plan was submitted to the Bankruptcy Court, not Defendants, and notwithstanding the fact that the Bankruptcy Code and Rules of Procedure make a creditor's response voluntary.  The two

schemes simply cannot be squared with one another. A reference to mortgage debt submitted as part of a Chapter 13 plan does not suffice to prompt obligations under Regulation X.

Accordingly, even assuming Maddox's complaint seeks to invoke Regulation X and its private right of action, she has not pled sufficient facts to sustain a claim. Because Maddox never submitted a valid loss mitigation application, Defendants could not have violated the procedural obligations such an application triggers.[2]

To the extent Maddox is dissatisfied that the Bankruptcy Court lifted the stay and declined to confirm her Second Amended Chapter 13 Plan, see Opp. at 2, 4; see also Compl. at 4, 5, 7, she had the opportunity to be heard by Judge Teel, who found that her Chapter 13 Plan was unsatisfactory and rejected her contention that she had positive equity in the property, see Bankruptcy Matter at ECF Nos. 82, 84, 85. Pursuant to his authority under 11 U.S.C. § 362(d)(1), and considering Maddox's failure to meet her post-petition payment obligations, Judge Teel declined to approve the Second Amended Chapter 13 Plan and lifted the stay. See id. at ECF Nos. 82, 85. Maddox had the opportunity to directly appeal the decisions of the Bankruptcy Court but chose to voluntarily dismiss that action. See Bankruptcy Matter at ECF Nos. 86, 87, 91; Opp. at 4; Compl. at 5, 7.[3] She cannot now seek collateral review under the guise of Dodd-Frank.

---

[2] Further, despite her assertions to the contrary, see Opp. at 2, Defendants had no obligation to offer Maddox loss mitigation options. See 12 C.F.R. § 1024.41(a) (A creditor has no duty "to provide any borrower with any specific loss mitigation option."). As to this allegation, Maddox has plainly failed to state a claim for which relief can be granted.

[3] To the extent that Maddox's claims may be construed as Defendants' alleged failure to offer a Home Affordable Mortgage Program ("HAMP") loan modification during the pendency of her Bankruptcy Case, such claims may not proceed. See MTD at 16. It has been long held that HAMP provides no private right of action to borrowers. See, e.g., Edwards v. Aurora Loan Servs., LLC, 791 F. Supp. 2d 144, 156 (D.D.C. 2011); Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 273–74 (S.D.N.Y. 2017) (collecting cases); Wilson v. Bank of America, N.A., 48 F.

For these reasons, Maddox has failed to state a claim upon which relief may be granted.

B. <u>Sale of the Property</u>

Maddox also claims that Defendants "sold [the] house at a foreclosure auction on July 20, 2017 to [themselves] below market value." Compl. at 7; Opp. at 3. She contends that these actions "were not fair and lacked Good faith," in violation of Dodd-Frank. Opp. at 3.

Maddox admits that she raised these same claims and issues before the Superior Court and D.C. Court of Appeals. Opp. at 3. She explicitly states that she "appealed the foreclosure in the District of Columbia Appeals Court for wrongful foreclosure based on . . . [the allegation] that the Defendant[s] sold the house at Auction to [themselves] approximately 40% below its value to avoid paying equity to me." <u>Id.</u> The District of Columbia courts have already heard and ruled on arguments that Defendants allegedly engaged in bad faith in their sale of the property "based on the monetary value and its exchanged [sic]." Opp. at 3; <u>see also</u> Foreclosure Matter at Entry No. 51; MTD Ex. 6 (Maddox contending in Superior Court that Defendants engaged in fraudulent conveyance, sold the house below market value to themselves, and avoiding paying her equity in the property); Foreclosure Matter at Entry Nos. 53–54, Ord. (D.C. Super. filed Sept. 15, 2017); MTD Ex. 7.

The so-called <u>Rooker-Feldman</u> doctrine prevents "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgement in a United States district court[.]" <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005–06 (1994); <u>see also</u> <u>District of Columbia v. Feldman</u>, 460 U.S. 462, 476 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923). While this doctrine is narrow, <u>see</u> <u>Williams v. Bank of New York Mellon</u>, 169 F. Supp.

---

Supp. 3d 787, 809 n.4 (E.D. Pa. 2014) (collecting cases); <u>Helmus v. Chase Home Finance, LLC</u>, 890 F. Supp. 2d 806, 812 (W.D. Mich. 2012) (collecting cases).

3d 119, 124 (D.D.C. 2016), it easily encompasses Maddox's challenge. She made the same arguments regarding the foreclosure sale in the D.C. courts and was unsuccessful in doing so. She now seeks to frame these claims in federal terms, generally invoking Dodd-Frank. That amounts to a collateral attack on the judgment of the D.C. courts, which the Rooker-Feldman doctrine prevents the Court from hearing. See, e.g., id. (applying Rooker-Feldman doctrine where plaintiffs' claims "amount[ed] to nothing more than a collateral attack on the . . . state court's foreclosure judgment."); Toth v. Wells Fargo Bank, N.A., 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (applying Rooker-Feldman doctrine where plaintiff "effectively s[ought] to collaterally attack the state court possession judgment ratifying the foreclosure and sale of . . . property."). Consequently, the Court lacks jurisdiction to hear this claim.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: March 7, 2019